| | |
|---|---|
| **TERRY HOUSTON,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-15-2507 |
| | * |
| **SHIRLEY KIRKLAND,** *et al.*, | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In an earlier Memorandum Opinion, the Court granted, in part, and denied, in part, Defendants' Motion for Summary Judgment, ECF No. 7. ECF No. 19. Only Plaintiff's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* remains. Presently pending before the Court is Defendants' Renewed Motion for Summary Judgment. ECF No. 46. For the following reasons, Defendants' Renewed Motion for Summary Judgment is granted.

### I. BACKGROUND

The facts of this case were fully set forth in the Court's December 7, 2016 Memorandum Opinion. ECF No. 19 at 1–8.[1] In short, Plaintiff Terry Houston, a then 66-year old female working as an administrative assistant for the Association of Classified Employees/American Federation of State, County, and Municipal Employees Local 2250 ("the Union") experienced a large pay cut in April 2012, which she alleges was a result of age discrimination. *Id.* at 2–3. After

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

briefing and argument on Defendants' Motion for Summary Judgment, the Court found that there were "genuine issues of material fact as to the existence of age discrimination, and Plaintiff had put forth enough direct or circumstantial evidence to survive summary judgment on her ADEA claim." ECF No. 19 at 21. The matter was set for trial.

Two weeks prior to trial, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, contending, for the first time, that because Plaintiff cannot establish that the Union meets the definition of employer under the ADEA, the Court did not have subject matter jurisdiction. ECF No. 46. After Plaintiff was given an opportunity to file a response, ECF No. 52, a telephone conference was held on June 2, 2017, and the Court declined to dismiss the case for lack of subject matter jurisdiction, but converted Defendants' Motion into a Renewed Motion for Summary Judgment. *See* ECF No. 63.[2] The Court further directed the parties to submit any additional evidence relevant to the issues raised. The Court has now reviewed the record in its entirety, the additional submissions of the parties, and relevant authorities, and finds that Plaintiff is unable to establish an essential element of her claim under the ADEA, namely that her employer, the Union, had the requisite twenty employees. Therefore, summary judgment is granted in favor of Defendants.

## II. STANDARD OF REVIEW

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[2] This decision was based on the Court's determination that the issue was not jurisdictional in nature, but rather, involved an element of the claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006), *French v. Applied Psych. Group*, Case No. 16-864, 2017 WL 1234059 (E.D. Tex. Mar. 24, 2017).

2

nonmoving party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

The burden is on the moving party to show "that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof." *Benton v. Prince George's Cmty. Coll.*, No. CIV.A. DKC 12-1577, 2013 WL 4501324, at *3 (D. Md. Aug. 21, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Thus, upon a motion for summary judgment, the opposing party "may not rest upon . . . mere allegations or denials," but rather, "must set forth specific facts showing that there is a genuine issue for trial. . . ." *Tyler v. Prince George's Cty., Maryland*, 16 F. App'x 191, 192 (4th Cir. 2001) (citing Fed. R. Civ. P. 56(e)).

### III. ANALYSIS

The ADEA prescribes that "[i]t shall be unlawful for an employer to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a). The issue before the Court is whether the Defendant had a sufficient number of employees to be considered an employer under the ADEA. Under 29 U.S.C. § 630(b), "[t]he term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." § 630(b). Plaintiff has identified a number of individuals who she contends were employees during

the relevant time periods. It is for the Court to determine which of these individuals are, as a matter of law, employees.

As courts have noted, the "definitions of 'employer' and 'employee' in federal law are often circular and explain nothing." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). The ADEA only provides that "[t]he term 'employee' means an individual employed by any employer." 29 U.S.C. § 630(f). "An employer has an employee if [the employer] maintains an employment relationship with that individual." *Taylor v. Cardiology Clinic, Inc.*, 195 F. Supp. 3d 865, 871–72 (W.D. Va. 2016) (citing *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). Accordingly, courts have adopted a test "called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id.* (citing *Walters*, 519 U.S. at 206–07). However, an individual's appearance on the employer's payroll is not necessarily dispositive, as "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law would not count" toward the minimum threshold of employees. *Walters*, 519 U.S. at 211. Thus, in addition to the payroll method, the Court also considers principles of control and common law agency when determining whether a particular individual is an "employee" under the relevant statutes. *See, e.g., Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448; *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 724 (D. Md. 2013); *Owens v. S. Dev. Council, Inc.*, 59 F. Supp. 2d 1210, 1214 (M.D. Ala. 1999).

The Court looks to the number of employees employed at the time of the alleged discrimination, as well as the preceding calendar year. *See, e.g., Brame v. Laborers' Dist. Council Health & Welfare Fund*, No. CIVI. A. 89-0745, 1989 WL 95225, at *2 (E.D. Pa. Aug.

11, 1989). In this case, the year 2012 provides the basis for Plaintiff's ADEA claim. *See* ECF No. 12 at 8–14. Thus, the Court must determine the number of employees the Union had during years 2011 and 2012 to assess whether Plaintiff can establish that the Union is liable as an "employer" under the ADEA. The alleged employees can be grouped into three categories: (1) full-time Union employees; (2) part-time and temporary workers; and (3) the Executive Board of Directors.

### a. Full-Time Union Employees

According to an affidavit from Shirley Kirkland, current President of the Union, ECF No. 46-2, as well as an Employee Information Report, ECF No. 52-1 at 1; *see also* ECF No. 7-1 at 18, the Union had ten full-time employees in 2012 (six full-time professional employees, three full-time clerical employees, and the Union President). These individuals include: Executive Director Daniel Besseck, James Spears, Jr., Courtney Wright, Adolfo Botello, Angela Thomas, Fred Shumate, Renee Dixon, Lisa Clemons, Terry Houston, and the then-President Shirley Adams. *See* ECF No. 52-1 at 1; ECF No. 7-2 at 18. In 2011, the preceding year, the Union had the same ten (10) employees. *See id.* There is no dispute that these individuals count towards the total number of employees.

### b. Part-Time and Temporary Workers

For 2011, in addition to the ten employees named above, the Union also employed James Shearer, Richard Putney, Faith Jones, and Shirley Breese, as part-time or temporary workers. *See* ECF No. 52-1 at 1; ECF No. 7-2 at 18. Mr. Shearer and Mr. Putney's statuses as employees under the statute do not appear to be disputed by the parties. Added to the ten full-time employees for 2011, that makes twelve employees. According to an affidavit submitted by current Union President Shirley Kirkland, however, Faith Jones "only worked until February 17,

2011." ECF No. 53-1 ¶ 4. Thus, Ms. Jones did not work for the requisite twenty-week period to be defined as an employee under the statute. Shirley Breese was hired on August 18, 2011. *Id.* She therefore worked for only nineteen weeks in 2011. Thus, neither Ms. Jones nor Ms. Breese is added to the total for 2011.

In 2012, according to the Employee Information Report, the Union also employed Keneth Clark, Shirley Breese, Constance Brown, and Morris Tolson. *See* ECF No. 52-1 at 1; ECF No. 7-2 at 18.[3] Mr. Clark's status as an employee does not appear to be disputed by the parties. Added to the ten full-time employees for 2012, that makes eleven. According to Shirley Kirkland, however, Shirley Breese worked only until February 29, 2012. ECF No. 51 ¶ 6. Ms. Breese therefore did not work for the requisite twenty weeks in 2012. Similarly, Constance Brown was hired on September 6, 2012, and her employment ended on September 29, 2012. *Id.*[4] Therefore, Ms. Brown also did not work for the requisite twenty weeks. Finally, Morris Tolson was hired on October 16, 2012, and his employment ended on January 13, 2013. ECF No. 51 ¶ 6. Thus, Mr. Tolson also did not work for the requisite twenty weeks in 2012.

Plaintiff also submits the affidavit of current President Shirley Adams, stating that there were five other individuals who worked temporarily for the Union during the relevant time periods. ECF No. 58 at 1. Ms. Adams names Beverly Johnson, Tom Cavenaugh, Mary Newman, "Mr. Curtis," and Alexander Dixon. Mary Newman, "a retiree," and Beverly Johnson, a "temp employee" allegedly helped assume some of Ms. Houston's responsibilities when Ms. Houston was out of work on injury after May 2012. *Id.* ¶ 4. According to Ms. Adams, Mr. Curtis, a

---

[3] The Employee Information Report for 2012 indicates that Faith Jones was employed by the Union in 2012, ECF No. 52-1 at 1; however, Shirley Kirkland attests in her affidavit that Ms. Jones' employment ended on February 17, 2011, and no W2 for 2012 exists for Ms. Jones. ECF No. 53-1 ¶ 4; *see* ECF No. 51-1 at 3–9. Plaintiff thus fails to show that Ms. Jones would be included in the employee count for 2012.

[4] With respect to Constance Brown, Plaintiff submits the affidavit of Shirley Adams, who attests that Ms. Brown worked until the "second week of October 2012." ECF No. 62. This difference is immaterial, however, because it still would not push Ms. Brown across the twenty-week threshold.

6

maintenance worker, had an "ongoing employment relationship with the union that lasted throughout [Ms. Adams'] term as president from 2011 thru 2014." *Id.* ¶ 5. Tom Cavenaugh, who Defendants term as a computer consultant, ECF No. 60 at 1, also allegedly had an "employment relationship" with the Union. *Id.* Ms. Adams further attests that Alexander Dixon, the son of Renee Dixon, did work for the Union over the summer and was on the payroll. *Id.*

Plaintiff has not, however, submitted any evidence of these individuals' employment with the Union or their compensation history. Conclusory statements, made "without specific evidentiary support" are insufficient to avoid summary judgment. *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). For example, Plaintiff submits only the affidavit of Shirley Adams attesting that Mary Newman "had a working relationship with the Local to assist with the processing of the sick leave bank from July to August 2012," which, in any case, would not constitute twenty weeks. By contrast, Defendants submit another affidavit of Shirley Kirkland attesting that Ms. Johnson was "an individual that was provided to us by a temporary employment agency," and that Ms. Johnson was not placed until 2013, ECF No. 60 ¶ 2, and Defendants also attach several invoices supporting this fact. ECF No. 60-1 at 2–3. Ms. Kirkland further attests that Mr. Cavenaugh has his own computer consulting business and worked with the Union as an independent contractor. ECF No. 60 ¶ 3. Plaintiff has submitted no evidence refuting this testimony, or showing that Mr. Cavenaugh was in fact an employee of the Union or worked at least twenty weeks for the Union in 2011 or 2012.[5] Even if the Court included all five of these named individuals, the count would fall short of twenty employees for both 2011 and 2012.

---

[5] To the extent Plaintiff has complained that Defendants raised this issue without warning just prior to trial, and that it involves an issue where most relevant material is in Defendants' possession, it must be noted that Plaintiff had months of pre-trial discovery during which she could have sought evidence from Defendants as to this element of her claim.

Neither Plaintiff's attachment of Defendants' Financial Reports indicating salary amounts expended for "Temp Help," ECF No. 64-1 at 1–9, nor the invocation of the joint employer doctrine, ECF No. 64 at 2, alter this conclusion. Plaintiff attests that between March 2011 and December 2012, Defendant AFSCME Local 2250 paid for "Temp services." ECF No. 64 at 2. For example, Plaintiff attaches a financial report from March 2011 that indicates $9,340.00 was paid for "Salaries – Temp – Help" in that month. Similarly, a report states that $9,450.00 was paid for "Salaries – Temp – Help" in April 2011 and that $9,000 was paid in May 2011, etc. *Id.* The Court is still unable to conclude based upon this submission, or any other evidence submitted thus far, how many employees were actually employed during this time. Even if Plaintiff could link the payment of temp salaries, *see* ECF No. 64 at 2, to any particular individual, she still fails to show that the alleged "employment relationship" (i.e. the individuals' appearance or non-appearance on the Union payroll) lasted for the requisite twenty weeks. *See Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 206 (1997).

Additionally, under the joint-employment doctrine, Plaintiff fails to establish how any temporary workers were actually "jointly employed" by both their respective employment agency (i.e. Cortemps Staffing Services, ECF No. 64 at 2, or otherwise) and Local 2250. *See Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414 (4th Cir. 2015) (adopting "hybrid test," combining control test and economic realities test, for determining whether an individual is jointly employed by two or more entities, reiterating that "control" is the principal guidepost, but noting that authority to hire and fire, degree to which worker is supervised, and where and how the work takes place are also "important" factors). Specifically, Plaintiff fails to show how the Union established "significant control" over these workers, such that they would be defined as "employees" at all, much less for twenty weeks or more. Thus, in total, Plaintiff has only

identified twelve employees for 2012 and eleven employees from 2011 from the first two categories.

### c. Executive Board of Directors

The Union's Executive Board also had sixteen board members (not including the President Shirley Adams) at all relevant times, *see* ECF No. 7-2 at 2–3, whom Plaintiff argues should be counted as employees. Pursuant to Article VIII of the Union's Constitution, the Union "shall have its business conducted by an Executive Board duly elected by the total members of the departments they represent." ECF No. 7-2 at 14. Election to the Executive Board is open to all classified employees of the Prince George's County Public Schools ("PGCPS") and to the full-time staff of the Union. *See id.* at 10. The Executive Board consists of two members from each of eight departments the members represent.[6] *Id.* From their membership, the board members elect a President, Vice President, Treasurer, and Secretary. *Id.* at 12–14. Board members are "required to attend each regularly scheduled Executive Board meeting," and those who fail "to attend three consecutive meetings without an appropriate excuse shall be removed from office." *Id.* at 15. Among other Union business, the Executive Board is empowered with the authority to determine compensation for Union staff. *See* ECF No. 7-2 at 3, 14.

Current President of the Union, Shirley Kirkland, attests that the Union President is the only board member that receives compensation. ECF No. 46-2 ¶ 4. Kirkland further attests that the board members "do not perform work for the Union, or take any direction from anyone at the Union." *Id.* According to Kirkland, the board members attend meetings and advocate on behalf of all Union members, but the board members are full-time employees of Prince George's County Public Schools, not the Union. *See id.*

---

[6] (1) Administrative Office Employees, (2) Central Garage Employees, (3) Food Services Employees, (4) Health Employees, (5) Instructional Aides, (6) Maintenance Employees, (7) School Office Employees, (8) Transportation Employees. ECF No. 7-2 at 14.

9

Plaintiff argues in her Opposition that the board members are paid by Local 2250 for "hours that they perform duties for Local 2250." ECF No. 52 ¶ 16. Plaintiff appears to argue that because the board members are employed full-time by PGCPS, and because the board members can request paid "organizational involvement leave" ("OIL") for Union-related activities, that the board members should be considered "employees" of the Union. *See id.* ¶ 16. Plaintiff explains that these Union-related activities include assisting "with mailings, other support services in the Union office, attending Board meetings or filling in for an absent or ill employee," and that "[d]uring this time, the members are on Local 2250's payroll." *Id.* ¶ 17. Plaintiff has not, however, provided the Court any information as to how many weeks, if any, the board members were actually on the Union payroll.

Moreover, on this point, Defendant counters that even if the board members do receive some compensation for participating in Union-related activities through OIL, the funds actually come from the PGCPS Board of Education, not the Union itself. *See* ECF No. 53 at 3–4; ECF No. 53-1 at 2. Kirkland attests that "this leave is paid for by the BOE," and "[o]ther than submitting the leave slip to the labor relations department of the BOE, the Union does not play any other role in this leave benefit provided by the BOE." ECF No. 53-1 at 2. Plaintiff does not controvert this testimony, but submits an affidavit from former Union President, Shirley Adams, describing the reimbursement procedure whereby "the board shall be reimbursed by the union for the cost of any substitute used . . . in the absence of regular employees who have been approved for OIL." ECF No. 58 ¶ 2. None of Plaintiff's proffers, however, supports her assertion that the board members were compensated as Union *employees*. *See Dean v. Am. Fed'n of Gov't Employees, Local 476*, 509 F. Supp. 2d 39, 53 (D.D.C. 2007) (finding union officers not employees where they did not receive compensation from the union).

Even assuming that Plaintiff could produce evidence that the board members were on the Union payroll for the requisite twenty weeks, the board members' appearance on the payroll would not resolve the question whether they were "employees" in light of traditional agency principles. In determining whether a director is an "employee," courts have applied the following factors of common-law agency: "(1) whether the director performed traditional employee duties; (2) whether the director was regularly employed by a separate entity; and (3) whether the director reported to someone higher." *Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Local 926*, 558 F. App'x 83, 85 (2d Cir. 2014); *E.E.O.C. v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1539 (2d Cir. 1996); *Chavero v. Local 241, Div. of the Amalgamated Transit Union*, 787 F.2d 1154, 1157 (7th Cir. 1986).

It is true that the board members "shall be required to attend each regularly scheduled Executive Board meetings," and those who fail "to attend three consecutive meetings without an appropriate excuse shall be removed from office." ECF No. 7-2 at 15. However, with the exception of limited activities performed for undefined periods of time, ECF No. 52 ¶ 17, what could be considered "traditional employee duties" ends there. *See Dean*, 509 F. Supp. 2d at 55 (finding union officers not employees where, in addition to not being compensated, officers did not perform traditional employee duties such as maintaining records or managing the office). Although the Union President does receive compensation from the Union, and would be considered an employee of the Union, *see* ECF No. 7-2 at 12, evidence in the record demonstrates that board members do not "take any direction from anyone at the Union," ECF No. 46-2 at 2, and in fact remain full-time employees of PGCPS, not the Union. Accordingly, there is no genuine dispute that the board members were not Union "employees" within the meaning of the statute.

11

Thus, as the total number of employees employed by the Union in 2011 and 2012 is less than twenty, Plaintiff cannot raise a genuine dispute of material fact as to whether the Union was an employer, an essential element of her ADEA claim, warranting summary judgment for Defendants.

**IV. CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Renewed Motion for Summary Judgment, ECF No. 46. Plaintiff's Motion for Leave to File a Surreply in Opposition to Defendants' Motion to Dismiss, ECF No. 65, is denied.[7] A separate Order shall issue.

Date: July 10, 2017

GEORGE J. HAZEL
United States District Judge

---

[7] Following the telephone status conference held on June 2, 2017, the Court provided both parties with the opportunity to submit additional evidence regarding the number of Union employees. The deadline for such submissions was set for 12:00 p.m. on June 3, 2017, in order to allow the Court to determine whether to proceed with the then-imminent trial. The Court subsequently reviewed Plaintiff's timely submission, ECF No. 61, as well as three late submissions, ECF Nos. 62, 63, and 64, in preparation for this Memorandum Opinion. On June 6, 2017, Plaintiff filed a Motion for Leave to File a Surreply in Opposition to Defendants' Motion to Dismiss. ECF No. 65. Loc. R. 105.2(a) provides that "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed. Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (internal citations omitted). In this instance, Plaintiff has been afforded ample opportunity to provide evidence establishing the requisite elements of her claim, and the Motion for Leave to File Surreply shall accordingly be denied.